**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ANTHONY E. GAUSE, | : | Case No. 3:24-cv-7 |
| | : | |
| Petitioner, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| WARDEN, CHILLICOTHE | : | |
| CORRECTIONAL INSTITUTION, | : | |
| | : | |
| Respondent. | : | |
| | : | |

## REPORT AND RECOMMENDATION[1]

Petitioner, a state prisoner proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and this Court's Amended General Order 22–05.  Pending before the Court are the Petition (ECF No. 1); Respondent's Return of Writ (ECF No. 10); Petitioner's Traverse (ECF No. 13); and the state court record (ECF No. 9 (Exhibits); ECF No. 9-2 (Trial Transcripts)).  For the reasons that follow, the undersigned **RECOMMENDS** that the Petition be **DENIED** and that this action be **DISMISSED**.  The undersigned further **RECOMMENDS** that the Court decline to issue a Certificate of Appealability ("COA").

## I.    Procedural History

The record shows the relevant procedural history.  (*See* ECF No. 9).  The Ohio Court of Appeals, Second Appellate District provided the following factual summary:

{¶ 2} The incident which formed the basis for the charges occurred on May 29, 2020, at a residence on Manhattan Avenue in Dayton, Ohio, where Gause was present with several other people, including William White, Timothy Cosby, and

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

Jayven Kilgore. The group of men had gathered at the residence on the previous night to drink alcohol and had remained there until the following morning. At approximately 7:00 a.m., White and Kilgore got into an altercation with one another, and Gause eventually got involved. Gause, Cosby, and White then chased Kilgore down Manhattan Avenue. Cosby had been walking his dog when the chase began.

{¶ 3} Kelly Smith, who lived in the neighborhood, testified that she heard some men yelling in the alley behind her house on the morning of the incident. Smith then observed three men running down the middle of Manhattan Avenue chasing another man. Smith also observed one of the men pull a handgun from the pocket or waistband of his pants and continue running down the street. Shortly after the men passed from Smith's sight, she heard gunshots.

{¶ 4} After receiving a "ShotSpotter" alert and several 911 calls regarding the shooting, Dayton Police Officer Chelsea Weitz responded to the scene and found Kilgore lying dead in front of a residence on Manhattan Avenue with a gunshot wound to the side of his chest. Evidence technician Craig Stiver testified that he located three spent .40 caliber cartridge casings in the street near where the shooting occurred. Detective David House testified that, after viewing a video recorded on a Ring Doorbell camera at the time of the shooting and speaking with other police officers at the scene, he identified Timothy Cosby as a witness and possible suspect in the shooting. At that point, Cosby had returned to the scene of the shooting to retrieve his cellphone, which he had dropped during the chase, and he was placed in the back of Officer Weitz's cruiser. Detective House directed Officer Weitz to transport Cosby to the Safety Building in Dayton to be interviewed. Detective House also took a screenshot from the Ring Doorbell video which depicted a man (later identified as Gause) who appeared to be holding a handgun in his right hand.

{¶ 5} After interviewing Cosby, Detective House focused his investigation on Gause. Cosby stated that Gause was his nephew and identified him as the individual who shot Kilgore. Cosby also provided Detective House with Gause's cellphone number. Detective House provided Gause's cellphone number to Detective Zach Farkas, who then contacted Gause's wireless carrier, T-Mobile, and pinged his cellphone in an effort to locate him. After "pinging" Gause's cellphone for approximately two hours, the police located Gause near the scene of the shooting at his girlfriend's apartment where he was eventually arrested and taken into custody.

{¶ 6} Prior to being interviewed, Gause was informed of his *Miranda* rights and signed a waiver of his rights. Detective House then interviewed Gause, who admitted to chasing Kilgore down Manhattan Avenue, pulling a .40 caliber handgun from his waistband, and firing shots in Kilgore's direction. Gause stated that he did not know whether Kilgore had been struck by any of the bullets. Significantly, during the interview, Gause never asserted that anyone else had a firearm on the morning of the shooting or that another person had shot at Kilgore as well.

Furthermore, as Gause sat alone in the interview room after the detective stepped out for a moment, he put his head in his hands and could be heard saying, "Here for murder. Why'd I do it?"

**{¶ 7}** On June 8, 2020, Gause was indicted for Count I, discharge of a firearm on or near a prohibited premises; Count II, felonious assault (deadly weapon); Count III, murder (proximate result); Count IV, felonious assault (serious harm); Count V, murder (proximate result); and Count VI, tampering with evidence (alter/destroy). Counts I through V were all accompanied by mandatory three-year firearm specifications. At his arraignment on June 11, 2020, Gause stood mute, and the trial court entered pleas of not guilty to the charged offenses on his behalf.

**{¶ 8}** On July 12, 2020, Gause filed a motion to suppress the statements he made during the interview with Detective House. A hearing was held on that motion on August 31, 2020, and the trial court overruled the motion to suppress on January 14, 2021.

**{¶ 9}** The case proceeded to a jury trial beginning on May 24, 2021. On May 27, 2021, the jury found Gause guilty of all of the charged offenses and the attendant firearm specifications. At sentencing on June 11, 2021, the trial court merged the felonious assault and murder offenses and sentenced Gause to an aggregate term of 24 years to life in prison.

*State v. Gause*, 2d Dist. App. No. 29162, 2022-Ohio-2168 (Ohio June 24, 2022); (ECF No. 9 at Ex. 15, PageID 157–59).

As noted, the jury found Petitioner guilty of all charges (Counts I-VI) and the attendant firearm specifications (Counts I-V). (ECF No. 9 at Ex. 5, PageID 52–79 (Verdicts and Specifications); ECF No. 9-2, PageID 730–34). Counts II, IV, and V merged with Count III. (ECF No. 9 at Ex. 8, PageID 90 (Termination Entry); ECF No. 9-2, PageID 741). On Count I, Petitioner was sentenced to a term of imprisonment for five to seven-and-a-half years for the discharge of a firearm on or near prohibited premises under Ohio Revised Code ("O.R.C.") 2923.162(A)(3)(C)(4), with a mandatory three-year term of imprisonment for the firearm specification, to be served consecutively. (ECF No. 9 at Ex. 8, PageID 90). On Count III, Petitioner was sentenced to a mandatory term of imprisonment for fifteen years to life for murder under O.R.C. 2903.02(B) to be served concurrently with Count I, with a mandatory three-year

term of imprisonment for the firearm specification to be served consecutively with both the sentence for Count I and the firearm specification on Count I.  (*Id.*).  On Count VI, Petitioner was sentenced to a term of imprisonment for thirty-six months to be served consecutively to the sentences on Counts I and III and the attendant firearm specifications.  (*Id.* at PageID 91).  Petitioner was sentenced to a total aggregate term of imprisonment for twenty-four years to life.  (*Id.*; ECF No. 9-2, PageID 746–47 (sentencing hearing)).

On June 15, 2021, Petitioner filed a Notice of Appeal with the state appellate court.  (ECF No. 9 at Ex. 9, PageID 94–95).  After the state appellate court denied the State's motion to dismiss (*id.* at Ex. 12, PageID 106–07), Petitioner filed his appellate brief on January 31, 2022, raising the following two assignments of error:

> [1] Appellant was denied his right to the effective assistance of counsel pursuant to Article I, Section 10 of the Ohio Constitution and the Sixth Amendment of the United States Constitution when his trial counsel failed to challenge the warrantless "ping" of Appellant's cell phone and failed to challenge whether exigent circumstances existed to obtain the warrantless "ping" as a matter of law.
>
> [2] Appellant's conviction is against the manifest weight of the evidence.

(*Id.* at Ex. 13, PageID 108–24).  On June 24, 2022, the state appellate court overruled Petitioner's assignments of error and affirmed the trial court's judgment against Petitioner.  (*Id.* at Ex. 15, PageID 156–66).

On August 25, 2022, Petitioner, proceeding *pro se*, filed a Motion for Leave to File a Delayed Appeal to the Ohio Supreme Court (*id.* at Ex. 17, PageID 169–72), which the Court granted (*id.* at Ex. 19, PageID 190).  In his Memorandum in Support of Jurisdiction, Petitioner raised the following two propositions of law:

> <u>First Proposition of Law</u>: Appellant was denied his right to the effective assistance of counsel when his trial counsel failed to challenge the warrantless ping of his cellphone by the police prior to his arrest in the motion to suppress.

> Second Proposition of Law: Appellant's conviction is against the manifest weight of the evidence.

(*Id.* at Ex. 20, PageID 191–203).  On January 17, 2023, the Ohio Supreme Court declined to accept jurisdiction.  (*Id.* at Ex. 22, PageID 221).

On January 8, 2024, Petitioner, proceeding *pro se*, sought a writ of habeas corpus in this Court, pursuant to 28 U.S.C. § 2254.  (Petition, ECF No. 1).  In his Petition, he raises the following two grounds for relief:

> **GROUND ONE:** Ineffective assistance of counsel for failure to challenge a warrantless ping on the Petitioners cell phone.
>
> Supporting Facts: The right of the people to be secure in their persons so secured by the 4th Amendment to the U.S. Constitution admittingly was violated by the State of Ohio when that right to privacy and unreasonable encroachment was violated by the conduct of Ohio's agents handling the investigation.  This conduct abridged the Petitioner's access to the protected fundamental due process and changed the ability of the Petitioner to present a meaningful defense and treated him like a criminal.
>
> **GROUND TWO:** Convictions are against the manifest weight of evidence in violation of the 5th and 14th Amendments to the United States Constitution.
>
> Supporting Facts: The Petitioner did not cooperate with detectives at the initiation of the investigation because he did not want to be labeled a snitch, but upon growth and being hit with reality that the State would be able to figure out that he in fact was not the one who shot and killed the victim in his case.  The evidence available to prosecution clearly show that the Petitioner was not the one who fired the fatal shot, but one of the other two who were with him that night the decedent was wrongfully killed.  Petitioner does not claim that he did not commit a crime but simply that he did not kill the decedent.

(*Id.* at PageID 5-7 (cleaned up)).

On May 13, 2024, Respondent filed the state court record (ECF No. 9), the trial transcripts (ECF No. 9-2), and a Return of Writ, asserting that Petitioner's claims should be dismissed as not cognizable in habeas review, dismissed due to procedural default, or denied on the merits (ECF

No. 10).  Petitioner filed a Traverse, noting that he is waiving his original ineffective assistance of trial counsel claim related to the warrantless ping:

> Petitioner herein waives the argument that his counsel was ineffective because he failed to challenge the warrantless cellphone pings which violated his Fourth Amendment rights, as said claim has nothing to do with whether Petitioner would have or could have been found guilt[y] without said evidence.

(ECF No. 13, PageID 802).  Petitioner instead appears to be raising a different ineffective assistance of trial counsel claim for the alleged failure to present a complete defense on Petitioner's behalf despite the evidence available at trial.  (*Id.* at PageID 801–02).  Petitioner also appears to present his manifest weight claim as a sufficiency of the evidence claim.  (*See id.* at PageID 797–800).  This matter is now ripe for review.

## II.    Standard of Review

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, apply to this case.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA limits the circumstances under which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding.  Specifically, under the AEDPA, a federal court shall not grant a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.

The United States Supreme Court and Sixth Circuit Court of Appeals have explained the measure of deference a federal habeas court must afford to a state court adjudication on the merits.

*Stermer v. Warren*, 959 F.3d 704, 720 (6th Cir. 2020) (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 592–93 (6th Cir. 2012)) ("[I]f a state court decides a claim on the merits, that decision is subject to significant deference."); *Haight v. Jordan*, 59 F.4th 817, 831 (6th Cir. 2023) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)) (noting that the AEDPA "requires that state court determinations 'be given the benefit of the doubt'").  A state court ruling that a "claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Stermer*, 959 F.3d at 721 (quoting *Harrington*, 562 U.S. at 101; *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted).  "[E]ven when the state court fails to explain its reasoning . . . the federal court must determine what arguments or theories . . . could have supported the state court's decision and afford those theories AEDPA deference."  *Id.* (quoting *Sexton v. Beaudreaux*, 585 U.S. 961, 964–65 (2018) (per curiam); *Harrington*, 562 U.S. at 102) (internal quotation marks omitted).  This standard is "intentionally 'difficult to meet.'"  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013)).

Additionally, this Court's habeas review is limited to the record that was before the state court that adjudicated the claim on the merits.  *Pinholster*, 563 U.S. at 181.  However, if "review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits."  *Upshaw v. Stephenson*, 97 F.4th 365, 372 (6th Cir. 2024) (quoting *Stermer*, 959 F.3d at 721).  "If a habeas petitioner satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d), AEDPA deference no

longer applies." *Stermer* 959 F.3d at 721. "Instead, the petitioner's claim is reviewed *de novo* as it would be on direct appeal." *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)). "The district court would also be free to expand the record, provided that the petitioner diligently attempted to present those facts in state court (or alternatively if [he] meets AEDPA's narrow exception for evidence of actual innocence)." *Id.* at 721–22 (citations omitted).

### III.    Discussion and Analysis

Petitioner filed the instant federal habeas corpus action, raising two grounds for relief. (Petition, ECF No. 1). Respondent maintains that Petitioner's ineffective assistance of counsel claim related to the warrantless ping is meritless because the state appellate court decision denying this claim was not unreasonable. (Return, ECF No. 10, PageID 773–80 (citing ECF No. 9 at Ex. 15, PageID 160–63)). As to the manifest weight claim, Respondent contends that Petitioner never raised the federal nature of the claim in state court. (*Id.* at PageID 764–69). Specifically, Respondent asserts that a manifest weight claim is not cognizable on federal habeas review, but if construed as a sufficiency of the evidence claim, then the claim is procedurally defaulted and meritless. (*Id.* at PageID 780–86).

In reply, Petitioner appears to portray his manifest weight claim as a sufficiency of the evidence claim. (Traverse, ECF No. 13, PageID 797–800). As noted above, Petitioner is waiving his original ineffective assistance of counsel claim related to the warrantless ping and attempts to raise a different ineffective assistance of counsel claim related to his trial counsel's defense strategy. (*Id.* at PageID 801–02). The undersigned addresses each claim in turn, except for Petitioner's ineffective assistance of counsel claim related to the warrantless ping based on his waiver of that claim in his Traverse.

### A.      Ground One: Ineffective Assistance of Trial Counsel

Petitioner attempts to raise a new ineffective assistance of counsel claim in his Traverse, asserting that his trial counsel failed to provide an adequate defense.  (ECF No. 13, PageID 801–02).  Petitioner contends that while "debatable trial tactics do not establish ineffective assistance of counsel," his trial counsel was aware that Cosby was an available, alternative suspect but failed to use the evidence as part of the defense strategy.  (*Id.* at PageID 802).  A petitioner may not, however, add new claims that were not in the petition by raising such claims in the traverse. *Jalowiec v. Bradshaw*, 657 F.3d 293, 311–12 (6th Cir. 2011) (citing *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005)) (finding that the district court "properly declined to address" claims raised in a traverse but not raised in an amended habeas petition).  Petitioner's new ineffective assistance of counsel claim should therefore be **DISMISSED** as improperly raised in his Traverse.

Even if Petitioner had properly raised this claim in his Petition, he failed to properly raise this claim in state court.  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c).  Fair presentment has come to describe a situation where a person convicted of a crime in a state court fails to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process.  A petitioner is required to "fairly present" his claims to the state courts. *Whitman v. Gray*, 103 F.4th 1235, 1238 (6th Cir. 2024) (quoting *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)).  To satisfy the fair presentment requirement, a petitioner must submit the "same claim under the same theory" as raised to the state courts before seeking federal

habeas relief. *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)); *Whitman*, 103 F.4th at 1238 (citing *Wagner*, 581 F.3d at 414–15) ("To satisfy the presentation requirement, the petitioner must have argued the claim's factual and legal basis at each level of the state court system.").

Petitioner did not raise this new ineffective assistance of counsel claim in state court. (*See* ECF No. 9 at Ex. 13, PageID 109–10 (listing the assignments of error Petitioner raised on direct appeal to the state appellate court); *id.* at Ex. 20, PageID 192 (listing the propositions of law raised in Petitioner's delayed appeal to the Ohio Supreme Court)). Because Petitioner did not fairly present this ineffective-assistance-of-trial-counsel claim in state court, the claim is defaulted unless he can show cause and prejudice or a fundamental miscarriage of justice to excuse the default. *Coleman v. Thompson*, 501 U.S. 722, 748–51 (1991) (citations omitted); *Jones v. Bradshaw*, 46 F.4th 459, 484 (6th Cir. 2022) (quoting *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020)).

To excuse the default with cause and prejudice, the "petitioner must demonstrate 'that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.'" *Jones*, 46 F.4th at 484–85 (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). To establish cause, a petitioner must show that "some objective factor external to his defense impeded his ability to comply with the state's procedural rule." *Bies v. Sheldon*, 775 F.3d 386, 396 (6th Cir. 2014) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). The petitioner bears the "burden of showing cause and prejudice." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)).

To excuse the default through showing a fundamental miscarriage of justice, the petitioner must demonstrate he is actually innocent through "new reliable evidence." *Dufresne v. Palmer*, 876 F.3d 248, 255–56 (6th Cir. 2017) (citing *Schlup v. Delo*, 513 U.S. 298, 321, 324 (1995)). "[I]n

an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011) (quoting *Murray*, 477 U.S. at 496); *Strouth v. Colson*, 680 F.3d 596, 608 (6th Cir. 2012) (citations omitted).  The actual innocence gateway, however, is an "extremely narrow exception" and is "rarely successful."  *Gibbs*, 655 F.3d at 477 (quoting *Schlup*, 513 U.S. at 324).

Petitioner appears to put forth an ineffective-assistance-of-appellate-counsel claim as cause to excuse the default.  (*See* Traverse, ECF No. 13, PageID 792–93).  Petitioner asserts that he has "suffered the consequences of ineffective assistance of both trial counsel, and appellate counsel for failing to raise any meritorious constitutional errors which could actually be advanced" in federal habeas proceedings.  (*Id.* at PageID 793).  A petitioner, however, "cannot use the ineffective assistance of appellate counsel as cause to excuse a procedurally defaulted claim when he has failed to present the claim of the ineffectiveness of appellate counsel as an independent claim or has otherwise procedurally defaulted that claim."  *Tomlinson v. Bradshaw*, No. 5:13-cv-1808, 2015 WL 106060, at *17 (N.D. Ohio Jan. 7, 2015) (citations omitted); *Ramirez v. Richard*, No. 16-3106, 2016 WL 11848848, at *4 (6th Cir. Nov. 22, 2016) (citing *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)); *Williams v. Anderson*, 460 F.3d 789, 799–800 n.1 (6th Cir. 2006).

In Ohio, a criminal defendant may file an application for "reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel."  Ohio App. R. 26(B)(1).  A Rule 26(B) application for reopening must be filed in the court of appeals where the appeal was decided within ninety days of the appellate court decision, unless good cause is shown for a later filing.  *Ramirez*, 2016 WL 11848848, at *4–5 (citing *Fautenberry v. Mitchell*, 515 F.3d 614, 639–40 (6th Cir. 2008); *Goldberg v. Maloney*, 692 F.3d

534, 538 n.3 (6th Cir. 2012)). Petitioner never filed a Rule 26(B) application for reopening in state court. (*See* ECF No. 9 at Exs. 23-25, PageID 222–44 (state court dockets)). Petitioner therefore cannot excuse the default with an ineffective-assistance-of-appellate-counsel claim because he never raised such a claim in state court and would be time-barred from doing so now.

Petitioner also contends that he is actually innocent.[2] (Traverse, ECF No. 13, PageID 792–93 (citations omitted)). To the extent that Petitioner asserts a gateway actual innocence claim to overcome the default, Petitioner has failed to present "new, reliable evidence" as required. *Dufresne*, 876 F.3d at 256 (citing *Schlup*, 513 U.S. at 321, 324); *Hodges*, 727 F.3d at 530 (citation omitted). Petitioner points out that "the Sixth Circuit has suggested that newly presented evidence is sufficient to satisfy excusing a procedural default," but then fails to present any new evidence to support his actual innocence assertions. (ECF No. 13, PageID 792–93 (citation omitted)). To the extent that Petitioner asserts that the "new" evidence is related to Cosby being an alternative suspect, he does not offer any details about Cosby's involvement that were not already introduced at trial. (*See id.* at PageID 802). Because Petitioner has not offered new evidence, he cannot excuse the default for the ineffective-assistance-of-counsel claim related to his trial counsel's defense strategy that he tried to raise in his Traverse.

Moreover, if this Court could reach the merits of Petitioner's ineffective assistance of trial counsel claim related to his counsel's defense strategy, Petitioner has failed to show his counsel performed deficiently and that he was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel is strongly presumed to have provided effective assistance to a defendant.

---

[2] The undersigned notes that if Petitioner is attempting to raise a freestanding actual innocence claim, the Sixth Circuit has "repeatedly indicated that such claims are not cognizable on habeas." *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) (quoting *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007)); *Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010).

*Mammone v. Jenkins*, 49 F.4th 1026, 1049 (6th Cir. 2022) (citing *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Strickland*, 466 U.S. at 689) ("The defendant must overcome the presumption that his counsel's actions were sound strategy.").  Review of "counsel's performance must be highly deferential," without "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.  In assessing whether the petitioner was prejudiced by counsel's alleged failures, a habeas court "must consider 'the totality of the evidence before the judge or jury.'" *Hinkle*, 271 F.3d at 245 (quoting *Strickland*, 466 U.S. at 695).

Although Petitioner contends that his trial counsel performed deficiently in failing to pursue an "alternative suspect" theory (Traverse, ECF No. 13, PageID 798–99), the record reflects that his counsel employed a strategy at trial to undercut the prosecution's evidence—and trial counsel's considered strategy decisions are virtually unchallengeable. *Mammone*, 49 F.4th at 1049 (citing *Pinholster*, 563 U.S. at 189; *Strickland*, 466 U.S. at 689).  Furthermore, Petitioner cannot establish prejudice for failing to pursue a third-party theory because, as explained below, the totality of the evidence shows that Petitioner admitted to firing shots toward the victim and the ballistics evidence established that all three bullets were fired from the same firearm. *Hinkle*, 271 F.3d at 245 (quoting *Strickland*, 466 U.S. at 695).

Based on the above, the undersigned **RECOMMENDS** that this claim be **DISMISSED** due to being improperly raised in the Traverse and due to procedural default.

## B.    Ground Two: Manifest Weight or Sufficiency of the Evidence

In his second ground for relief,[3] Petitioner asserts that his convictions were against the manifest weight of the evidence because the "evidence available to prosecution clearly show that

---

[3] In his Traverse, Petitioner refers to the manifest weight/sufficiency of evidence claim as ground for relief one and his ineffective assistance of counsel claim as ground for relief two.  (ECF No. 13, PageID 797, 801).

the Petitioner was not the one who fired the fatal shot."  (Petition, ECF No. 1, PageID 7).

Respondent contends that a manifest weight of the evidence claim is not cognizable on federal

habeas review and that Petitioner never raised the "federal nature" of the claim in state court.

(Return, ECF No. 10, PageID 764, 780–81).  Respondent also notes that if the claim is instead

construed as a sufficiency of the evidence claim, then such a claim is procedurally defaulted and

meritless.  (*Id.* at PageID 764–69, 781–85).  In reply, Petitioner appears to present his assertions

as a sufficiency of the evidence claim, noting that the state courts unreasonably applied the

reasonable doubt standard.  (Traverse, ECF No. 13, PageID 797).

The Supreme Court and Sixth Circuit have explained that a "*pro se* complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers."  *Heyward v. Cooper*, 88 F.4th 648, 653–54 (6th Cir. 2023) (quoting *Erickson v. Pardus*,

551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "A document filed *pro se* is

'to be liberally construed.'"  *Erickson*, 551 U.S. at 94 (quoting *Gamble*, 429 U.S. at 106).

"[L]iberal construction," though, "does not require a court to conjure allegations on a litigant's

behalf."  *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quoting *Erwin v. Edwards*, 22 F.

App'x 579, 580 (6th Cir. 2001)).

Petitioner appears to be urging this Court to construe his "manifest weight of the evidence"

claim, which is not cognizable in habeas corpus, as a "sufficiency of the evidence" claim, which

is cognizable in habeas corpus.  Out of an abundance caution, the undersigned addresses both

claims, but either way, his arguments fail.

### a.  Manifest Weight of the Evidence

Petitioner asserts that his convictions were against the manifest weight of the evidence.

(Petition, ECF No. 1, PageID 7).  Respondent contends that this claim is not cognizable in federal

habeas review.  (Return, ECF No. 10, PageID 780–81).  Petitioner raised this claim on direct appeal.  (ECF No. 9 at Ex. 13, PageID 122–23).  The state appellate court overruled this claim, concluding that the "jury reasonably credited the State's evidence, which established that Gause was the individual who shot and killed Kilgore."  (*Id.* at Ex. 15, PageID 166).

The Sixth Circuit and other courts in this District have found that a "manifest-weight claim is not cognizable on federal habeas review because it is a state-law argument."  *E.g.*, *Thomas v. Taskila*, No. 23-1423, 2023 U.S. App. LEXIS 30660, at *17 (6th Cir. Nov. 16, 2023) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007)); *Myers v. Haviland*, No. 17-4220, 2018 U.S. App. LEXIS 38924, at *5 (6th Cir. Apr. 12, 2018) (citing *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1976)) ("[S]uch a claim does not present a federal constitutional question and is not cognizable on federal habeas review."); *Stokes v. Warden*, No. 2:22-cv-3921, 2023 WL 6961414, at *11 (S.D. Ohio Oct. 20, 2023) (citing *Ross v. Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at *2–3 (S.D. Ohio Apr. 7, 2011)) ("Manifest weight of the evidence is a matter of pure state law, and thus, is not a cognizable claim in habeas."). Further, this Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court" because in federal habeas proceedings, it is the "province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citations omitted) ("An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.").  *See James v. Corrigan*, 85 F.4th 392, 397 (6th Cir. 2023) (citing *Matthews*, 319 F.3d at 788) ("And testimonial credibility is outside the scope of appellate review. . . . Juries choose which witnesses and statements to believe, and a court can't substitute its judgments for a jury's.").

Thus, to the extent that Petitioner asserts that his convictions were against the manifest weight of the evidence, it is not within this Court's purview to reassess the weight and credibility of evidence presented at trial. *Thomas*, 2023 U.S. App. LEXIS 30660, at *17 (citing *Estelle*, 502 U.S. at 67–68; *Nash*, 258 F. App'x at 764 n.4); *Matthews*, 319 F.3d at 788. The undersigned **RECOMMENDS** that Petitioner's manifest weight claim be **DISMISSED** as not cognizable.

### b. Sufficiency of the Evidence

To the extent that Petitioner intended to raise a sufficiency of the evidence claim, Respondent asserts that if Petitioner's manifest weight claim is construed as a sufficiency of the evidence claim, then the claim is defaulted. (Return, ECF No. 10, PageID 764–69). As Respondent points out, it is "plain from the record that a constitutional sufficiency of the evidence claim was never presented to or considered by the Ohio courts." (*Id.* at PageID 766).

On direct appeal, Petitioner relied on Ohio case law to support his claim:

> A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Kennedy*, 2018-Ohio-4997, P9, 2018 Ohio App. LEXIS 5326, *5. The appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 (1997).

(ECF No. 9 at Ex. 13, PageID 122). Petitioner explained that he admitted firing two shots but then noted that the "record in this case should not support any finding of fact beyond a reasonable doubt that [he] pulled the trigger leading to the fatal wound." (*Id.* at PageID 123). Petitioner asserted that his shots were "warning shots" and that he did not kill the victim. (*Id.*). Petitioner's contentions, however, sought review of the weight of evidence based on "too many inconsistencies and factual questions," rather than whether the state presented sufficient evidence to support his

convictions.  (*Id.*).  As Respondent maintains, Petitioner failed to raise the "federal nature" of the claim in state court.  (Return, ECF No. 10, PageID 764).

Like the ineffective assistance of counsel claim Petitioner tried to raise in his Traverse, Petitioner failed to fairly present a sufficiency of the evidence claim to the state courts to preserve the claim for federal habeas review.  *Whitman v. Gray*, 103 F.4th 1235, 1238 (6th Cir. 2024) (quoting *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)); *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  For the same reasoning as detailed above regarding Petitioner's first ground for relief, Petitioner cannot excuse the default through cause and prejudice or the actual innocence gateway.  (*See supra* Ground for Relief One); *Jones v. Bradshaw*, 46 F.4th 459, 484 (6th Cir. 2022) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)) (cause and prejudice); *Dufresne v. Palmer*, 876 F.3d 248, 255–56 (6th Cir. 2017) (citing *Schlup v. Delo*, 513 U.S. 298, 321, 324 (1995)) (actual innocence).

In any event, if the Court considered the merits of Petitioner's sufficiency of the evidence claim, the evidence is viewed in the light most favorable to the prosecution.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The Supreme Court held in *Jackson* that because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.*

Under the *Jackson* standard, the State is not required to "rule out every hypothesis except that of guilt beyond a reasonable doubt."  *Id.* at 326.  Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor

of the prosecution, and must defer to that resolution." *Id.*; *Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983). It is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences" from the evidence. *Jackson*, 443 U.S. at 319. "Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury." *Zonou v. Warden, Chillicothe Corr. Inst.*, No. 1:12-cv-69, 2013 U.S. Dist. LEXIS 32236, at *37 (S.D. Ohio Mar. 8, 2013) (citing *Jackson*, 443 U.S. at 318–19, n.13; *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011); *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *York v. Tate*, 858 F.2d 322, 329 (6th Cir. 1988) (per curiam)). In other words, a federal habeas court owes deference to the trier of fact in reviewing sufficiency of the evidence claims.[4] *Moreland v. Bradshaw*, 699 F.3d 908, 920 (6th Cir. 2012) (quoting *Jackson*, 443 U.S. at 326) (citing *Wright v. West*, 505 U.S. 277, 296–97 (1992) (plurality opinion)) (finding that if the record "supports conflicting inferences," then the reviewing court "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution").

Further, a conviction may be sustained "based upon nothing more than circumstantial evidence." *Tucker v. Palmer*, 541 F.3d 652, 657 (6th Cir. 2008) (citing *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006); *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994)); *James v. Corrigan*, 85 F.4th 392, 396 (6th Cir. 2023) (citing *Cooper v. Chapman*, 970 F.3d 720, 732 (6th Cir. 2020); *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000)) ("States can prove guilt

---

[4] The undersigned notes that even though the state appellate court never analyzed Petitioner's claim as a sufficiency of the evidence argument, this habeas reviewing court owes deference not only to the jury but to the state appellate court's factual findings as well. 28 U.S.C. § 2254(e)(1); *Upshaw v. Stephenson*, 97 F.4th 365, 370–71 (6th Cir. 2024) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003); *Ferensic v. Birkett*, 501 F.3d 469, 472–73 (6th Cir. 2007)).

beyond a reasonable doubt using exclusively circumstantial evidence."). A federal habeas court reviewing sufficiency of evidence claims "assess[es] whether the jury could 'draw reasonable inferences' from the evidence to establish the relevant element of the crime." *James*, 85 F.4th at 396 (quoting *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam)).

The jury had sufficient evidence to conclude that one of the shots fired by Petitioner could have been the fatal one. In analyzing Petitioner's manifest-weight claim, the state appellate court pointed out the following:

> Gause was convicted of the murder of Jayven Kilgore, in violation of R.C. 2903.02(B). Therefore, the jury necessarily found that Gause has caused the death of Kilgore as a proximate result of causing or attempting to cause Kilgore physical harm with a deadly weapon, which the jury also found to be a .40 caliber handgun.

(ECF No. 9 at Ex. 15, PageID 165). Although Petitioner claims that the record does not support a finding that he fired the fatal shot, he admitted firing two shots from his .40 caliber handgun in the direction of the victim. (ECF No. 9-2, PageID 625–29 (detailing Petitioner's interview with Detective David House from the Dayton Police Department)). The state also elicited testimony suggesting that the bullet found inside the victim was damaged in a way that indicated the bullet struck something before entering the victim's body. (*Id.* at PageID 539–40, 562–63). The jury could reasonably infer that one of the shots Petitioner fired was the fatal shot, even if it were intended as a warning. *Tucker*, 541 F.3d at 657 (citing *Kelley*, 461 F.3d at 825); *James*, 85 F.4th at 396 (quoting *Johnson*, 566 U.S. at 655).

As the state appellate court highlighted, "although Gause admitted to firing only two shots, all three shell casings recovered by the police were found to have come from the same .40 caliber handgun." (ECF No. 9 at Ex. 15, PageID 165). Further, the court noted that there was "no evidence adduced during trial which established that anyone other than Gause was in the possession of a handgun before, during, or after the shooting occurred" and that Petitioner never claimed that he

passed the firearm off to anyone else. (*Id.*). The court also pointed out that although the state's witness Kelly Smith suggested that she saw the person wearing orange pajama pants (Cosby) with the firearm, Smith was also sure that the person with the dog (also Cosby) did not have the firearm. (*Id.* at PageID 165–66; ECF No. 9-2, PageID 422–29 (testifying that the man wearing the white tank top, later identified as Petitioner, was the one with the gun)). This Court owes deference to the trier of fact, and the jury found Petitioner guilty on all counts. *Moreland*, 699 F.3d at 920 (quoting *Jackson*, 443 U.S. at 326). Viewing the evidence in the light most favorable to the prosecution, the jury had sufficient evidence to determine that Petitioner fired the fatal shot. Petitioner's sufficiency of the evidence claim therefore lacks merit.

Accordingly, the undersigned **RECOMMENDS** that this claim be **DISMISSED** as not cognizable in federal habeas review (manifest weight claim), and alternatively, due to procedural default and based on the merits (sufficiency of the evidence claim).

## IV. Recommended Disposition and Certificate of Appealability Determination

For the foregoing reasons, the undersigned **RECOMMENDS** that the Petition be **DENIED**, and this action be **DISMISSED**.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a District Court must consider whether to issue a Certificate of Appealability ("COA"). A state prisoner who seeks a writ of habeas corpus in federal court does not have an automatic right to appeal a district court's adverse decision unless the court issues a COA. 28 U.S.C. § 2253(c)(1)(A). When a claim has been denied on the merits, a COA may be issued only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)).  When a claim has been denied on procedural grounds, "a COA should issue when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

Because no reasonable jurist would disagree with the conclusion reached by the Court in this matter, the undersigned **RECOMMENDS** that Petitioner should not be granted a certificate of appealability.  *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) ("While this standard is not overly rigid, it still demands 'something more than the absence of frivolity.'").

**IT IS SO RECOMMENDED**.


March 28, 2025                                         *s/Peter B. Silvain, Jr.*
                                                       Peter B. Silvain, Jr.
                                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it within **FOURTEEN DAYS** after being served with a copy thereof.  Fed. R. Civ. P. 72(b); Rule 12 of the Rules Governing Section 2254 Cases in the United States District Court.  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the fourteen-day objections period if a timely motion for an extension of time is filed.  A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).